# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT A. MASON, on behalf of himself, all others similarly situated and the general public,<br><br>Plaintiff,<br><br>v.<br><br>HEEL, INC., a New Mexico Corporation,<br><br>Defendant. | Case No. 3:12-cv-03056-GPC-KSC<br><br>**FINAL ORDER: (1) APPROVING CLASS ACTION SETTLEMENT, (2) AWARDING CLASS COUNSEL PARTIAL FEES AND EXPENSES, (3) AWARDING CLASS REPRESENTATIVE INCENTIVE AWARD, (4) PERMANENTLY ENJOINING PARALLEL PROCEEDINGS, AND (5) DISMISSING ACTION WITH PREJUDICE** |

## PROCEDURAL HISTORY

On December 21, 2012, plaintiff Robert A. Mason ("Plaintiff") filed a complaint against defendant Heel, Inc. ("Defendant"), alleging: (1) violations of California's Unfair Competition Law ("UCL"), California Business and Professions Code Section 17200 et seq.; (2) violations of California's False Advertising Law ("FAL"), California Business and Professions Code Section 17500 et seq.; (3) violations of California's Consumer Legal Remedies Act ("CLRA"), California Civil Code Section 1750 et seq.; (4) breach of express and implied warranties; and (5) violation of the Magnuson-Moss Warranty Act ("MMWA"), 15 U.S.C. § 2301 et seq.

(ECF No. 1, Compl.)

Defendant manufactures, markets, and sells certain homeopathic products in the United States. Plaintiff alleges "Defendant's marketing and promotion of its products was supported by false and misleading claims containing material omissions and misrepresentations." (Compl. ¶ 76.) Defendant denies these allegations.

After arms-length settlement discussions, the parties entered into a Settlement Agreement dated July 24, 2013 ("Agreement" or "Settlement Agreement"). Currently pending before the Court is Plaintiff's Motion for Final Approval of the Settlement Agreement, along with Plaintiff's Motion for Attorneys' Fees and Incentive Award for the Class Representative. Having considered the parties' submissions, and having received no objections to any terms contained in the Settlement Agreement, the Court will **GRANT** Plaintiff's Motion for Final Approval of Class Action Settlement.

On October 30, 2013, the Court entered its Order (1) Preliminarily Approving Class Action Settlement, (2) Certifying Class, (3) Appointing Class Representative and Lead Class Counsel, (4) Approving Notice Plan, and (5) Setting Final Approval Hearing ("Preliminary Approval Order"), in which it preliminarily approved the Settlement. (ECF No. 27.) The Court also scheduled a hearing to determine whether the Settlement is fair, reasonable, adequate, in the best interests of the Class, and free from collusion, such that the Court should grant Final Approval of the Settlement, and to consider Plaintiff's motion for an award of attorneys' fees, costs, and litigation expenses, and incentive for the Class Representative ("Fairness Hearing").

The Court has considered:
- Plaintiff's Motion for Final Approval of Class Action Settlement, along with the memorandum of points and authorities, declarations, and exhibits submitted therewith ("Final Approval Motion"), (ECF No. 34);
- Defendant's Notice of Non-opposition to the Final Approval Motion, along with the declaration submitted therewith, (ECF No. 35);
- Plaintiff's Motion for Attorneys' Fees, Costs and Incentive Award, along

with the declarations and exhibits submitted therewith ("Fee Motion"), (ECF No. 30);

- the Settlement Agreement, (ECF Nos. 25-1 (sealed), 26-2 (redacted));
- the entire record in this matter, including, but not limited to, the parties' submissions in support of their Joint Motion for Preliminary Approval of Class Action Settlement, (ECF Nos. 25, 26);
- the Notice Plan, providing full and fair notice to the Class, (ECF No. 26-2 at 80-84);
- the absence of any objections to the Settlement Agreement by Class Members;
- the absence of any requests to opt-out of the Settlement by Class Members;
- the absence of any objection or response by any official after the provision of all notices required by the Class Action Fairness Act of 2005, 28 U.S.C. §1715;
- the oral presentations of Class Counsel and Counsel for Defendant at the Fairness Hearing;
- this Court's experiences and observations while presiding over this matter; and
- the relevant law.

Based upon these considerations and the Court's findings of fact and conclusions of law as set forth in the Preliminary Approval Order and in this Final Approval Order (1) Approving Class Action Settlement, (2) Awarding Class Counsel Partial Fees and Expenses, (3) Awarding Class Representative Incentive, (4) Permanently Enjoining Parallel Proceedings, and (5) Dismissing Action with Prejudice ("Final Approval Order"), and good cause appearing, **IT IS HEREBY ORDERED**:

1.     **Definitions.** The capitalized terms used in this Final Approval Order shall have the meanings and/or definitions given to them in the Settlement Agreement

or, if not defined therein, the meanings and/or definitions given to them in this Final Approval Order.

2. **Incorporation of Documents.** This Final Approval Order incorporates the Settlement Agreement, including all exhibits thereto, and the Court's findings and conclusions contained in its Preliminary Approval Order.

3. **Jurisdiction.** The Court has personal jurisdiction over the Parties, the Class Members, including objectors, and Defendant. All Class Members who have not excluded themselves according to the procedures set forth in the Court's Preliminary Approval Order are deemed to have consented to the personal jurisdiction of this Court for purposes of this action, including the final approval of the Settlement Agreement. The Court has subject-matter jurisdiction over this action, including, without limitation, jurisdiction to approve the Settlement, to dispose of all claims alleged in this action (including the Released Claims), to resolve any objections to the Settlement, and to dismiss this action with prejudice.

## Findings and Conclusions

4. **Definition of the Class and Class Members.** The Court's Preliminary Approval Order defines the "Class," which is comprised of the "Class Members," as follows:

> All U.S. consumers who purchased the Products listed in Exhibit D to the Agreement, for household or personal use, during the Class Period (as defined by Paragraph 1.7 of the Agreement) are included. Excluded from the Class are: Heel; persons who during or after the Class Period were officers or directors of Heel, or any corporation, trust or other entity in which Heel has a controlling interest; Heel employees; the members of the immediate families of Heel employees or their successors, heirs, assigns and legal representatives; and any judicial officer hearing this Litigation, as well as their immediate family members and employees.

As set forth in the Preliminary Approval Order and in the following section, the Court finds the requirements for certifying a Rule 23(b)(2) and (b)(3) class are satisfied. All Class Members are therefore subject to this Final Approval Order.

///

### 5. Class Certification (Rule 23)

#### A. Numerosity

Defendant's relevant sales in the United States are in the millions of dollars annually, meaning Defendant has presumably sold its products to thousands of individuals nationwide. (*See* ECF No. 25-4, Decl. Christian Grimm ¶ 5.) The Court therefore continues to finds the Class is sufficiently numerous under Rule 23(a)(1).

#### B. Commonality

The Court finds the primary question of fact in this case—to wit, whether the uniform labeling of Defendants' Products was false or deceptive—is common to the Class. All Class Members allege the same injury: loss of money spent purchasing the Products that Plaintiff alleges were deceptively labeled. All Class Members were exposed to the same labeling materials, which material made claims regarding the level of dilution in the Products, as represented by an "X" in the ingredients list. Resolving the common question of whether Defendant's labeling claims were deceptive would resolve a substantial portion of Plaintiff's claims in one stroke. No party or objector contests commonality. Accordingly, the Court continues to find the commonality requirement under Rule 23(a)(2) satisfied.

#### C. Typicality

The Court finds Plaintiff's claims are reasonably co-extensive with, and indeed identical to, those of the Class. The Court thus continues to find Rule 23(a)(3)'s typicality requirement satisfied.

#### D. Adequacy of Class Representative

Having considered the factors set forth in Rule 23(g)(1), the Court finds that Plaintiff and Class Counsel are adequate class representatives. Class Counsel has fully and competently prosecuted all causes of action, claims, theories of liability, and remedies reasonably available to the Class Members. The Court therefore continues to find it appropriate for the Law Offices of Ronald A. Marron to serve as Class Counsel. The Court also continues to find it appropriate for Robert A. Mason to serve

as Class Representative, finding that he possesses no interests adverse to the Class and that he has demonstrated his willingness and ability to adequately represent the Class.

### E. Rule 23(b) Has Been Satisfied

For purposes of this Settlement, the Court finds the requirements of subsections (b)(2) and (b)(3) of Rule 23 have been met. The Court continues to find 23(b)(2)'s requirements satisfied because the labeling of Defendant's products applied generally to the Class, and a significant portion of the relief provided to Class Members under the Settlement Agreement consists of injunctive relief in the form changes to the labels of Defendant's Products. The Court also continues to find 23(b)(3)'s requirements satisfied. The Court finds the common question of whether the uniform labeling of Defendant's Products was false or deceptive predominates over any individualized questions. The Court also finds that resolution on a class-wide basis is superior than alternative options for purposes of judicial efficiency and to provide a forum for absent Class Members, who are unlikely to bring individual suits to recover the sum of approximately $25.00 per Product.

**6.    The Settlement.** The Court finds the Settlement is fair, reasonable, and adequate to the Class, in light of the complexity, expense, and likely duration of the Litigation, and the risks involved in establishing liability, damages, and in maintaining the action as a class action, through trial and appeal. *See Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 963 (9th Cir. 2009). The Settlement is the result of arms-length negotiations, and there is no evidence of collusion or other conflicts of interest between Plaintiff, Class Counsel, and the Class. *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011).

**A.** The Parties reached the proposed Settlement only after proceeding with voluntary investigation and discovery in this action, and following several months of negotiations before a capable and well-respected mediator, the Honorable Leo S. Papas (Ret.) of Judicate West. Between February 2013 and July 2013, the parties engaged in extensive negotiations, including joint and individual mediation

sessions with Judge Papas, and the parties' own follow-up negotiations, in order to reach agreement over the specific terms of the Settlement.

Plaintiff and Class Counsel maintain that this action and the claims asserted herein are meritorious and that Plaintiff and the Class would have prevailed at trial. Notwithstanding this position, Plaintiff and Class Counsel have agreed to settle the Litigation pursuant to the provisions of the Settlement Agreement, after considering, among other things: (i) the substantial benefits to Plaintiff and the Class under the terms of the Settlement Agreement; (ii) the uncertainty of being able to prevail at trial; (iii) the uncertainty relating to Defendant's defenses and the expense of additional motion practice in connection therewith; (iv) the issues related to proving damages on an individual basis; (v) the attendant risks, difficulties, and delays inherent in litigation; and (vi) the desirability of consummating this Settlement promptly in order to provide effective relief to Plaintiff and the Class.  Plaintiff and Class Counsel agree the Settlement is fair, reasonable, and adequate because it provides substantial benefits to the Class, is in the best interests of the Class, and fairly resolves the claims alleged in this action.

Defendant expressly denies any wrongdoing alleged in Plaintiff's Complaint, and does not admit or concede any actual or potential fault, wrongdoing, or liability in connection with any facts or claims which have been or could have been alleged against it in the action.  Defendant asserts that it sells, manufactures, and markets its Products in accordance with well-recognized and widely-accepted homeopathic principles that have been adopted by the Food and Drug Administration ("FDA"). The FDA polices and enforces federal rules and regulations regarding homeopathic drug labels—rules and regulations with which Defendant avows it is in compliance. Defendant nonetheless considers it desirable for the action to be settled and dismissed because the proposed Settlement will: (i) avoid further expense and disruption of the management and operation of Defendant's businesses due to the pendency and defense of the action; (ii) finally put the claims of Plaintiff and the Class to rest; and

1  (iii) avoid the substantial expense, burdens, and uncertainties associated with a potential finding of liability and damages on the claims alleged in the Complaint.

The parties also fully briefed an extensive motion to dismiss in this action, which included, *inter alia*, claims and defenses with regard to the Food, Drug and Cosmetic Act ("FDCA"), 21 U.S.C. § 301 et seq., including whether the FDCA preempts the consumer-fraud claims asserted by Plaintiff and whether Plaintiff may claim that Defendant lacks clinical proof supporting its claims about the Products. As noted above, the parties also engaged in voluntary discovery and mediation efforts. Moreover, Class Counsel and Counsel for Defendant are experienced civil litigators with general knowledge of complex class-action litigation and the ability to assess the risks, expenses, and duration of such litigation. Class Counsel and Counsel for Defendant also possess specialized knowledge of food-and-drug labeling issues in particular. It may thus be said that the parties were fully informed of the legal bases for the claims and defenses asserted herein and were thus capable of balancing the risks of continued litigation and the benefits of the Settlement.

**B.** The Settlement provides for fair, reasonable, and adequate cash payments and/or other monetary benefits to every Class Member, with a common fund of $1 million and payments of up to $150 for each Class Member that submits proof(s) of purchase for the Products with a Claim Form, and up to $100 for each Class Member that does not submit receipts or evidence of purchase (such as packaging), but who signs a Claim Form under penalty of perjury. No portion of the substantial Settlement relief will revert to Defendant. Any excess monies in the Settlement Fund, after payment of all Valid Claims, attorneys' fees and expenses, incentive award, claims administrator fees and expenses, and taxes shall be distributed as follows: (i) 50% as a pro rata supplemental cash payment to all Class Members that submitted a Valid Claim Form, and (ii) 50% as a *cy pres* award to Consumers Union, a non-profit organization dedicated to enhancing consumer understanding in the realm of drug labeling.

The Settlement also affords meaningful injunctive relief. First, in order to address concerns that consumers may not be aware that homeopathic products have not been subject to the same FDA scrutiny as allopathic drugs, Defendant has agreed to provide the following FDA Disclaimer to inform consumers with regard to the Products' claims of efficacy: "These statements have not been evaluated by the Food and Drug Administration." (Settlement Agreement ¶ 4.1.2.)

Second, to address Plaintiff's concern that homeopathic labels do not sufficiently explain the concept of a homeopathic dilution, Defendant has agreed to provide a Dilution Disclaimer in close proximity to the Drug Facts panel on each of its labels, which shall state: "'X' is a homeopathic dilution: see www.[link created pursuant to ¶ 4.1.4 of the Settlement] for details." (*Id.* ¶ 4.1.3.) The identified webpage shall provide consumers a more detailed explanation of the dilutions. (*Id.* ¶ 4.1.4.) For consumers wishing more information about homeopathy, Defendant shall also include a link to the FDA website's Compliance Policy Guide § 400.400 for homeopathic drugs on all websites Defendant owns or operates in a reasonably accessible location. (*Id.* ¶ 4.1.4.4.)

Third, Defendant has agreed that it shall not use the words "Natural," "All Natural," "100% Natural," or similar language on any of the Products unless Defendant qualifies that language by referring only to those ingredients that are natural. (*Id.* ¶ 4.1.7.)

Fourth, Defendant shall not use the words "Clinically Proven," on any of the Products for which it does not possess two, independent, randomized, double-blind, placebo-controlled human clinical trials. (*Id.* ¶ 4.1.8.)

Fifth, Defendant shall not use the words "Doctor Recommended," or similar on any of the Products unless Defendant qualifies whether any doctors that recommend the Products are homeopathic practitioners or allopathic physicians.

The Court has considered the realistic range of outcomes in this matter, including the amount Plaintiff might receive if he prevailed at trial on behalf of

himself and/or the Class, the strengths and weaknesses of the case, the novelty and number of complex legal issues involved, and the risk that Plaintiff and the Class would receive less than the relief provided under the Settlement Agreement or take nothing at trial. The relief offered under the Settlement is fair, reasonable, and adequate in view of these factors.

**C.** The Court has found no evidence of collusion between Plaintiff and Defendant or their respective counsel. The Settlement resulted from arms-length, adversarial negotiations. Up to and through Settlement, the parties litigated and negotiated this action as the Court would expect of adversarial parties.[1] Further, the Court has evaluated the factors set forth by the Ninth Circuit for determining whether the parties have colluded, finding no evidence of collusion. *See In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 947 (9th Cir. 2011) (the three factors are: "(1) when counsel receive a disproportionate distribution of the settlement, . . . (2) when the parties negotiate a 'clear sailing' arrangement providing for the payment of attorneys' fees separate and apart from class funds, . . . and (3) when the parties arrange for fees not awarded to revert to defendants . . . .").

Class Counsel has requested 30% of the Settlement Fund, which the Court finds is above the benchmark for class-counsel fee awards in a common-fund settlement, though still within the range of fees awarded by other courts in the Ninth Circuit. *See Fischel v. Equitable Life Assurance Society of U.S.*, 307 F.3d 997, 1006 (9th Cir. 2002) ("We have established a 25 percent 'benchmark' in percentage-of-the-fund cases that can be 'adjusted upward or downward to account for any unusual

---

[1] Class Counsel examined and evaluated the relevant facts and law to assess the merits of the instant claims and to determine how best to serve the interests of Plaintiff and the Class. In doing so, Class Counsel reviewed a substantial amount of evidence produced by Defendant consisting of marketing data, label and package mechanicals, sales figures, unit sales, detailed advertising information, scientific studies, lists of recommending doctors, and detailed financial information. Class Counsel is also experienced in prosecuting claims alleging deceptive advertising by homeopathic drug manufacturers, along with food and diet supplement class actions in general. (*See* ECF No. 26-2, Marron Decl. ¶¶ 7-8, 13-20.)

1  circumstances involved in [the] case.'" (citation omitted)).  Defendant also retained
2  the right to oppose the Fee Motion to the extent Plaintiff's Fee Application exceeded
3  five percent over the benchmark common fund percentage in the Ninth Circuit.  No
4  portion of the Settlement Fund reverts to Defendant.  The Parties also agreed to the
5  terms of the Settlement before discussing attorneys' fees, another factor which weighs
6  against a finding of collusion.  *See, e.g. Weeks v. Kellogg Co.*, 2011 U.S. Dist. LEXIS
7  155472, at *83 (C.D. Cal. Nov. 23, 2011).

8    **D.** The response of the Class to this action, the certification of a class,
9  and the Settlement, including Class Counsel's application for an award of attorneys'
10  fees, litigation expenses, and the Class Representative's incentive, after full, fair, and
11  effective notice thereof, strongly favors final approval of the Settlement.  Out of the
12  estimated millions who received Notice, no class members submitted valid requests
13  for exclusion.  Moreover, no objections were filed.  These Court has considered these
14  results as favoring final approval of the Settlement.

15    **7.** **Notice to the Class.**  The Class has received the best practicable notice in
16  light of the fact that Defendant does not collect or maintain information sufficient to
17  identify Class Members.  The Parties' selection and retention of SEOmap as the
18  Settlement Administrator was reasonable and appropriate.  Based on the Declaration
19  of Gajan Retnasaba of SEOmap, the Court hereby finds that the Settlement Notices
20  were published to the Class Members in the form and manner approved by the Court
21  in its Preliminary Approval Order.  (ECF No. 34-2.)  The Settlement Notices provided
22  fair, effective, and the best practicable notice to the Class of the Settlement and the
23  terms thereof.  The Notices also informed the Class of Plaintiff's intent to seek
24  attorneys' fees, costs, and an incentive payment, and set forth the date, time, and place
25  of the Fairness Hearing and Class Members' rights to object to the Settlement or Fee
26  Motion and to appear at the Fairness Hearing.  The Court further finds that the
27  Settlement afforded Class members a reasonable period of time to exercise such
28  rights.  *See Weeks v. Kellogg Co.*, 2011 U.S. Dist. LEXIS 155472, at *82 (C.D. Cal.

Nov. 23, 2011) (class members' deadline to object or opt out must arise after class counsel's fee motion is filed); *In re Mercury Interactive Corp. Secs. Litig.*, 618 F.3d 988, 994 (9th Cir. 2010) (same). The Settlement Notices fully satisfied all notice requirements under the law, including the Federal Rules of Civil Procedure, the requirements of the California Legal Remedies Act, Cal. Civ. Code § 1781, and all due process rights under the U.S. Constitution and California Constitutions.

8. **Notices Pursuant to 28 U.S.C. § 1715.** The Court finds Defendant has satisfied all notice requirements of the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1715, as attested to by the Declaration of Matthew G. Ball. (ECF No. 35-1.) On October 29 and 30, 2013, Defendant served the notices required by 28 U.S.C. § 1715(b), which included a copy of the Settlement Agreement and other required documents, as well as notice of the date, time, and place of the Fairness Hearing. The Court has received no objection or response to the Settlement agreement by any federal or state official, including any recipient of the foregoing notices. This fact further supports the fairness of the Settlement.

9. **Implementation of Settlement.** The Parties are directed to implement the Settlement according to its terms and conditions.

10. **Appeal after Implementation.** Any Class Member who failed timely and validly to object to the Settlement has waived any objection. Any Class Member seeking to appeal the Court's rulings must: (a) move to intervene upon a representation of inadequacy of counsel (if they did not object to the proposed Settlement under the terms of the Settlement); (b) request a stay of implementation of the Settlement; and (c) post an appropriate bond. Absent satisfaction of all three requirements, Defendant is authorized, at its sole option and in its sole discretion, to proceed with the implementation of the Settlement, including before the Effective Date, even if such implementation would moot any appeal.

11. **Release.** The Release set forth in the Settlement Agreement is expressly incorporated herein in all respects, is effective as of the date of the entry of this Final

Approval Order, and forever discharges the Released Parties from any claims or liabilities released by the Settlement, including the Released Claims, and including without limitation a waiver of all rights under Section 1542 of the California Civil Code.  This Release covers, without limitation, any and all claims for attorneys' fees and expenses, costs or disbursements incurred by Class Counsel, the Settlement of this Action, the administration of such Settlement, and the Released Claims, except to the extent otherwise specified in this Order and the Settlement Agreement.

**12.   Binding Affect and Permanent Injunction.**  The Settlement and this Final Approval Order shall be forever binding on the Plaintiff and all other Class Members, as well as their heirs, executors and administrators, successors and assigns, and shall have *res judicata* and other preclusive effect in all pending and future claims, lawsuits or other proceedings maintained by or on behalf of any such persons, to the fullest extent allowed by law.  The Court hereby permanently enjoins all Class Members from filing, commencing, prosecuting, intervening in, maintaining, participating (as class members or otherwise) in, or receiving any benefits from, any lawsuit (including putative class action lawsuits), arbitration, administrative or regulatory proceeding or order in any jurisdiction asserting any claims released by this Order; and from organizing Class Members into a separate class to pursue as a purported class action any lawsuit (including by seeking to amend a pending complaint to include class allegations, or seeking class certification in a pending action) asserting any claims released by this Order.  Nothing in this paragraph, however, shall require any Class Member to take any affirmative action with regard to other pending class action litigation unrelated to this action in which they may be absent class members.  Defendant has reserved the right to file motions or to take other actions to enforce the release provisions of the Settlement Agreement and of this injunction, as they may deem appropriate.  The Court finds that issuance of this permanent injunction is necessary and appropriate in the aid of the Court's jurisdiction over the action and its judgments.

### 13. Attorneys' Fees and Litigation Expenses.

The Court orders that Class Counsel is entitled to an award of reasonable attorneys' fees and litigation expenses incurred in connection with the action and in reaching this Settlement, to be paid at the time and in the manner provided in the Settlement Agreement. The fee award sought in the present case is reasonable when judged by the standards of this circuit.

In common-fund cases, such as this, courts have discretion to use either a percentage or lodestar method when evaluating class counsel's request for attorneys' fees. *Hanlon*, 150 F.3d at 1029. Applying the percentage of the common fund method is appropriate in this case, as there exists a common fund in an amount certain. The Ninth Circuit "has established 25% of the common fund as a benchmark award for attorney fees." *Id.* Class Counsel asserts a 30% fee award is justified here per the results obtained, the experience and skill of Counsel, the complexity of issues, the risk of non-payment and preclusion of other work, the reaction of the Class, and the fact that Defendant is required to provide greater disclosure regarding homeopathic products than the FDA now requires.

The Court disagrees that a deviation from the benchmark is appropriate in this case. Even considering the parties' out-of-court investigative, discovery, mediation, and negotiation efforts, the Court finds nothing takes this case out of the ordinary realm of consumer class actions involving deceptive marketing. Indeed, the fact that this case settled before the pleadings were settled and before Plaintiff even moved for class certification distinguishes this case from those circumstances where a deviation from the benchmark might be justified. The Court thus finds an award that is consistent with the 25% benchmark to be reasonable. The Court therefore awards Class Counsel $250,000.00 in attorneys' fees.

The reasonableness of the fee award is supported by a lodestar cross-check analysis. To determine the lodestar amount, "the number of hours reasonably expended on the litigation [is] multiplied by a reasonable hourly rate." Hensley v.

Eckerhart, 461 U.S. 424, 433 (1983).  This figure may then be adjusted upward or downward after considering the *Kerr* factors.[2]

Assuming the hours Class Counsel expended were reasonable (Class Counsel does not provide any billing records) and Class Counsel's hourly rates were reasonable (the Court finds they are slightly inflated), the Court calculates a lodestar amount of $268,851.50.  (*See* ECF No. 30-1 at 37, Fee Mot., App. 1.)  This amount includes 150 additional hours that Class Counsel estimates it will expend on post-Fee Application hours.

The Court is not inclined to increase the lodestar amount under the *Kerr* factors.  While the Court notes the excellent results for the Class, along with Class Counsel's experience, reputation, and ability to litigate class actions of this nature, the Court finds this is not an exceptional case in terms of the time and labor required, the novelty and difficulty of the questions involved, or the skill required to represent Plaintiff and the Class.  The customary (i.e., benchmark) fee for common-fund cases such as this is 25% of the common fund, and awards in similar cases are consistent with this benchmark.  The Court is unaware of anything that would make this case more "undesirable" than other consumer class actions involving allegations of deceptive marketing/labeling.  Class Counsel does not provide in its Fee Motion information about any applicable fee agreements, the time limitations imposed by this case, or the nature and length of Class Counsel's relationship with Plaintiff.  The

---

[2] The twelve Kerr factors bearing on the reasonableness are:

> (1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the "undesirability" of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases.

*Kerr v. Screen Guild Extras, Inc.*, 526 F.2d 67, 70 (9th Cir.1975), *cert. denied*, 425 U.S. 951 (1976).

1  Court thus finds no reason to adjust the lodestar amount. An award of $250,000 is
2  therefore only slightly below the generous lodestar amount of $268,851.50. This
3  confirms that an award of 25% of the Settlement Fund is a reasonable amount.[3]

4  As for expenses, the Court has reviewed Class Counsel's out-of-pocket costs
5  and litigation expenses (paid and un-reimbursed, or currently due). (ECF No. 30-1 at
6  38.) The Court finds Class Counsel's costs and expenses were of a nature typically
7  billed to fee-paying clients and that said expenses were reasonable and necessarily
8  incurred in light of the extent of proceedings both in and out of court, the complexity
9  of the legal and factual issues in the case, the amount at stake in this litigation, and the
10 efforts of all counsel and parties to this action. The Court thus awards Class Counsel
11 $3,997.72 in costs and expenses, to be paid from the Settlement Fund as set provided
12 in the Settlement Agreement.

13 In further support of the Court's fee and expense awards, the Court notes that
14 neither Plaintiff nor any Class Member is obligated to pay Class Counsel any further
15 amounts for attorneys' fees, costs, and litigation expenses in the Action. As no Class
16 Member objected to Class Counsel's request attorneys' fees, costs, and litigation
17 expenses were made, the Court concludes that no Class Member is entitled to seek or
18 receive any further payment of attorneys' fees, costs, or litigation expenses in
19 connection with this action.

20 **14. Class Representative's Incentive.** Plaintiff, whom the Court appointed
21 Class Representative in its Preliminary Approval Order, has actively participated in
22 and assisted Class Counsel with this litigation for the substantial benefit of the Class

---

[3] The Court is not inclined to increase the value of the Settlement Fund based on Defendant's costs of implementing injunctive relief. While it is true that future customers will have the benefit of more information on Defendant's packaging, the value of this benefit is not necessarily commensurate with Defendant's implementation costs. See Staton v. Boeing Co., 327 F.3d 938, 974 (9th Cir. 2003) ("[O]nly in the unusual instance where the value to individual class members of benefits deriving from injunctive relief can be accurately ascertained may courts include such relief as part of the value of a common fund for purposes of applying the percentage method of determining fees.").

despite facing significant personal limitations.  Mr. Mason waived his right to pursue potential individual claims or relief in this action.  Apart from the requested incentive and his share of the Settlement Fund as will be distributed to the Class in general, Mr. Mason will receive no settlement payments or benefits of any nature.  The Court therefore awards $3,500 to Mr. Mason as Class Representative, to be paid at the time and in the manner provided in the Settlement Agreement.  Mr. Mason was actively involved throughout the Litigation and contributed significant time and expense in seeing this action to fruition.  The Court approves this incentive payment to compensate Mr. Mason for the burdens of his active involvement in the Litigation and his commitment and effort on behalf of the Class.

**15.  Class Member Objections.**  The Court has received no objections to, or requests to opt out of, the Settlement.  The Class Action Administrator has similarly received no objections to, or requests to opt out of, the Settlement.  (ECF No. 34-2, Retnasaba Decl. ¶¶ 17-19.)  To the contrary, the Class Action Administrator has received over 10,600 claims under the terms of the Settlement and anticipates receiving a total of 18,000 claims by the June 5, 2014 claims deadline.

**16.  Modification of Settlement Agreement.**  The Parties are hereby authorized, without needing further approval from the Court, to agree to and adopt <u>non-substantive</u> amendments to, modifications of, and/or expansions of the Settlement Agreement, if such changes are consistent with this Order and do not limit the rights of any person or Class Member entitled to relief under this Agreement.  All substantive amendments, modifications, and/or expansions shall be submitted to the Court in the form of a joint motion for approval.  An example of a non-substantive amendment, modification, and/or expansion includes the need to extend a deadline contained in the Settlement Agreement for administrative purposes.

**17.  Enforcement of Settlement.**  Nothing in this Final Approval Order shall preclude any action to enforce or interpret the terms of the Settlement Agreement.  Any action to enforce or interpret the terms of the Settlement Agreement shall be

brought solely in this Court.

18. **Retention of Jurisdiction.**  The Court expressly retains continuing jurisdiction as to all matters relating to the Settlement, and this Final Approval Order, and for any other necessary and appropriate purpose.  Without limiting the foregoing, the Court retains jurisdiction over all aspects of this case including but not limited to any modification, interpretation, administration, implementation, effectuation, and enforcement of the Settlement, the administration of the Settlement and Settlement relief, including notices, payments, and benefits thereunder, the Settlement Notice and sufficiency thereof, any objection to the Settlement, any request for exclusion from the certified Class, the adequacy of representation by Class Counsel and/or the Class Representative, the amount of attorneys' fees and litigation expenses to be awarded Class Counsel, the amount of any incentives to be paid to the Class Representative, any claim by any person or entity relating to the representation of the Class by Class Counsel, to enforce the release and injunction provisions of the Settlement and of this Order, any remand after appeal or denial of any appellate challenge, any collateral challenge made regarding any matter related to this litigation or this Settlement or the conduct of any party or counsel relating to this litigation or this Settlement, and all other issues related to this action and Settlement.  Further, the Court retains jurisdiction to enter any other necessary or appropriate orders to protect and effectuate the Court's retention of jurisdiction provided that nothing in this paragraph is intended to restrict the ability of the Parties to exercise their rights under the Settlement Agreement.

19. **No Admissions.**  This Final Approval Order and the Settlement, all provisions herein or therein, all other documents referred to herein or therein, any actions taken to carry out this Final Approval Order and the Settlement, and any negotiations, statements, or proceedings relating to them in any shall not be construed as, offered as, received as, used as, or deemed to be evidence of any kind, including in this action, any other action, or in any other judicial, administrative, regulatory, or

other proceeding, except for purposes of obtaining approval of the Settlement and the entry of judgment in this action, enforcement or implementation of the Settlement, or to support any defense by Defendant based on principles of *res judicata*, collateral estoppel, release, waiver, good-faith settlement, judgment bar or reduction, full faith and credit, setoff, or any other theory of claim preclusion, issue preclusion, release, injunction, or similar defense or counterclaim to the extent allowed by law.  Neither the Settlement Agreement nor any related negotiations, statements, mediation positions, notes, drafts, outlines, memoranda of understanding, or Court filings or proceedings relating to the Settlement or Settlement approval, shall be construed as, offered as, received as, used as, or deemed to be evidence or an admission or concession by any person, including but not limited to, of any liability or wrongdoing whatsoever on the part of Defendant or as a waiver by Defendant of any applicable defense, including without limitation any applicable statute of limitation.

      **20.**    **Conclusion and Order.  IT IS HEREBY ORDERED** that:

      a. The Fee Motion, (ECF No. 30), is **GRANTED IN PART** and **DENIED IN PART** with respect to Class Counsel's request for attorneys' fees and **GRANTED** with respect to Class Counsel's request for costs, litigation expenses, and Mr. Mason's incentive payment;

      b. The Final Approval Motion, (ECF No. 34), is **GRANTED**;

      c. This action, including all individual and Class claims resolved in it, is **DISMISSED WITH PREJUDICE**, without an award of attorneys' fees, costs, litigation expenses, or incentive payments to any party except as provided in this Final Approval Order.  The Clerk of Court is directed to enter **FINAL JUDGMENT** accordingly.

DATED: March 13, 2014

HON. GONZALO P. CURIEL
United States District Judge